**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

KIM L.,[1]

   **Plaintiff,**

              **Case No. 2:24-cv-4957**
 v.           **Magistrate Judge Norah McCann King**

FRANK BISIGNANO,[2]
**Commissioner of Social Security,**

   **Defendant.**

## OPINION AND ORDER

  This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Kim L. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court reverses the Commissioner's decision and remands the matter for further proceedings.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Frank Bisignano, the current Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

1

## I.    PROCEDURAL HISTORY

On April 20, 2021, Plaintiff filed her application for benefits, alleging that she has been disabled since July 23, 2020. R. 114, 120, 227–33. The application was denied initially and upon reconsideration. R. 131–35, 137–41. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 142–43. ALJ Dina Loewy held a hearing on November 3, 2022, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 76–113. In a decision dated July 6, 2023, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from July 23, 2020, Plaintiff's alleged disability onset date, through the date of that decision. R. 58–70. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on March 6, 2024. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On May 7, 2024, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 4.[3] On February 10, 2025, the case was reassigned to the undersigned. ECF No. 20. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

Cir. 2000); *see also* 42 U.S.C. § 405(g). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of

social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016).  The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight."  *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4.  The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review."  *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected."  *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a

comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

### B.      Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f).

6

If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 49 years old on her alleged disability onset date. R. 115, 121. Plaintiff met the insured status requirements of the Social Security Act through December 31, 2025. R. 61. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between July 23, 2020, her alleged disability onset date, and the date of the decision. *Id*.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: mild left carpal tunnel syndrome; right wrist de Quervain's tenosynovitis with a related surgery; a right shoulder disorder status post-two surgeries; cervical degenerative disc disease and related radiculopathy; right knee osteoarthritis and meniscal tear; and obesity. *Id*. The ALJ also found that the following impairments were not severe: benign hypertension, mild intermittent asthma, plantar fasciitis, heel spurs, ankle synovitis, right carpal tunnel syndrome and left ankle injury. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 61–62.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to

various additional limitations. R. 62–70. The ALJ also found that this RFC permitted the performance of Plaintiff's past relevant work as an office clerk. R. 69–70. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from July 23, 2020, her alleged disability onset date, through the date of the decision. R. 70.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief,* ECF No. 10; *Plaintiff's Reply Brief*, ECF No. 19. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief*, ECF No. 16.

## IV.    SUMMARY OF RELEVANT MEDICAL EVIDENCE

Nancy Simpkins[4] conducted an initial review of Plaintiff's medical record on behalf of the state agency on June 29, 2021. R. 115–19. Consultant Simpkins specifically considered the medical evidence as it appeared in the record at that time, which included, among other things, medical evidence from April 2021 that revealed no significant tenderness over the AC joint of the right shoulder as well as mild tenderness over the anterior and posterior joint line and pain with range of motion above 150°; muscle strength was 5/5; she had moderate tenderness in the area of the right trapezius with muscle spasm and tenderness in the area of the right rhomboid and levator scapulae, decreased range of motion of the cervical spine, and a positive Spurling's test. R. 116. Consultant Simpkins opined, *inter alia*, that Plaintiff could stand/walk for a total of

---

[4] Consultant Simpkins' specialty is internal medicine, R. 118, but her credentials do not otherwise appear in the record. R. 114, 118–19.

four hours per day and could sit for about 6 hours in an eight-hour workday; she could occasionally lift and/or carry 20 pounds, and could frequently lift and/or carry 10 pounds. R. 117. Plaintiff had no manipulative limitations. R. 118.

Vaghenag Tarpinian[5] reviewed Plaintiff's medical record upon reconsideration for the state agency on October 20, 2021. R. 121–26. Consultant Tarpinian specifically noted that, as of June 2021, Plaintiff had more tingling in her hands and that a physician had noted in October 2021 that Plaintiff had "[t]rapezius tenderness, tares minor spasms, subscapularis spasms, scalene muscle tenderness, rhomboid pain, and paracervicals tenderness. Decreased Pain Level and Improved AROM." R. 121–22. Consultant Tarpinian agreed with Consultant Simpkins that Plaintiff could stand/walk for a total of four hours per day and could sit for about 6 hours in an eight-hour workday; she could occasionally lift and/or carry 20 pounds and could frequently lift and/or carry 10 pounds. R. 124. However, Consultant Tarpinian also opined, *inter alia*, that Plaintiff had manipulative limitations, including a limited ability to reach overhead with both arms and a limited ability to handle (gross manipulation) with her left hand. R. 124 (finding "Limited Both" and "Limited Left[,]" respectively in these activities). He based his conclusion on "CTS / R SHOULDER PAIN[.]" *Id*.

## V. DISCUSSION

At step four of the sequential evaluation process, the ALJ found that Plaintiff had the RFC to perform a limited range of light work as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except frequently lifting and/or carrying 10 pounds; standing and/or walking with normal breaks for a total for both of 2 hours in an 8-hour workday; sitting for six hours in an 8-hour workday; occasionally climbing ramps

---

[5] As with Consultant Simpkins, Consultant Tarpinian's specialty is internal medicine and his credentials do not appear in the record. R. 120, 125–26.

or stairs; never climbing ladders, ropes or scaffolds; occasionally balancing or stooping; never kneeling, crouching or crawling; *frequent handling and fingering; occasional reaching overhead*[6], bilaterally; must avoid concentrated exposure to extreme temperatures, wetness or humidity, to vibrations, and to pulmonary irritants such as fumes, odors, dusts or gases; must avoid all exposure to hazardous machinery and unprotected heights and driving a motor vehicle; and cannot operate foot controls.

R. 62 (emphasis added). In reaching this determination, the ALJ considered, *inter alia*, the state

agency consultants' opinions as follows:

> The state agency physical consultants' shared opinion that the claimant was capable of a range of light exertion is persuasive. Her records show that the combination of her impairments does not preclude her from performing work-related activities, the pain and abnormalities caused by the combination of her impairments that limit her to less than light work. *Giving the claimant the benefit of the doubt, the undersigned has assessed a <u>more restrictive</u> residual functioning capacity assessment* (2A, 4A).

R. 68 (emphasis added).

Plaintiff argues that, despite finding Consultant Tarpinian's opinion persuasive, the ALJ

improperly and without explanation failed to include that consultant's manipulation limitations

in the RFC, thus requiring remand. *Plaintiff's Brief*, ECF No. 10, pp. 21–25; *Plaintiff's Reply*

*Brief*, ECF No. 18, pp. 1–5. For the reasons that follow, this Court agrees that this issue requires

remand.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,*

186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and

satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to

perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the

ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and

---

[6] "Although frequent reaching in all other directions was not included in the hypothetical posed, the record indicates that the claimant did not perform more than frequent reaching at her past relevant work. (3E)." R. 62 n.1.

10

explain why the ALJ accepted some evidence but rejected other evidence.  *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[7] the Commissioner's regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c).

The applicable regulation emphasizes that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior

---

[7] As previously noted, Plaintiff's claim was filed on April 20, 2021.

administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at § 404.1520c(a). As to the supportability factor, the regulation provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(1).  As to the consistency factor, the regulation provides that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(2).

The applicable regulation further requires the ALJ to articulate her "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at § 404.1520c(b). As previously noted, "[s]upportability and consistency are the most important factors. . . . ALJs need not explain their determinations regarding the other factors, but they must discuss supportability and consistency." *Gongon v. Kijakazi*, 676 F. Supp. 3d 383, 394 (E.D. Pa. 2023) (citations omitted); *see also Stamm v. Kijakazi*, 577 F. Supp. 3d 358, 370 (M.D. Pa. 2021) ("Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors, but if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors."). Finally, an ALJ "need not reiterate the magic words 'support' and 'consistent' for each doctor" in order to satisfy the articulation requirements for the supportability and consistency factors, providing that the judge

12

"weave[s] supportability and consistency throughout her analysis of which doctors were persuasive." *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024).

In her challenge, Plaintiff argues that the ALJ found Dr. Tarpinian's opinion persuasive, but did not include in the RFC his corresponding manipulation limitations. *Plaintiff's Brief*, ECF No. 10, pp. 21–25. Plaintiff further argues that the ALJ's failure to explain this omission leaves subsequent reviewers, including this Court, unable to follow the ALJ's reasoning in denying Plaintiff's claim for benefits. *Id*. The Commissioner responds that the RFC includes manipulation limitations (*i.e.*, referring to "frequent"—as opposed to "constant"—handling and fingering as well as "occasional"—as opposed "constant" or "frequent"—reaching overhead), and that these findings are supported by substantial evidence. *Defendant's Brief*, ECF No. 16, p. 10. The Commissioner argues that the ALJ provided reasons for not assessing greater limitations in discounting Plaintiff's subjective statements. *Id*. at 10–11. The ALJ did not reject Dr. Tarpinian's limitations, the Commissioner argues; instead, the RFC adequately accounted for that consultant's manipulation opinion which was based on "CTS/R Shoulder pain". *Id*. at 11–13. In reply, Plaintiff insists that the difference between the two state agency reviewing medical consultants' opinions—notably, regarding manipulation limitations—is crucial and that the RFC's "slight" limitation to "frequent" (as opposed to "constant") neither addresses that difference nor explains the ALJ's limitation. *Plaintiff's Reply Brief*, ECF No. 18, pp. 1–5. According to Plaintiff, it is simply unclear why the ALJ stated that, giving Plaintiff the benefit of the doubt, she assessed a "more restrictive" RFC. *Id*.

This Court agrees that the lack of clarity in the ALJ's reasoning requires remand. As an initial matter, the ALJ mischaracterized the state agency medical consultants' differing opinions as a "shared opinion" when, in fact, those consultants disagreed as to Plaintiff's manipulation

13

restrictions. *Compare* R. 118 (reflecting Consultant Simpkins' opinion on initial review that Plaintiff had no manipulation limitations), *with* 124 (reflecting Consultant Tarpinian's opinion that Plaintiff had manipulation limitations, including a limited ability to reach overhead with both arms ("Limited Both") and a limited ability to handle (gross manipulation) with her left hand ("Limited Left")); *see also Murphy v. Comm'r of Soc. Sec.*, No. 1:19-CV-20122, 2020 WL 7022746, at *6 (D.N.J. Nov. 30, 2020) ("The ALJ's reliance on this misconception, along with other unsupported mischaracterizations of Plaintiff's physical abilities . . . permeates the ALJ's decision. As stated above, these errors cannot be separated from the ALJ's analysis of other record evidence such that the Court may determine whether substantial evidence supports the ALJ's RFC analysis."); *Coniglio v. Colvin*, No. CV 15-40, 2016 WL 4385870, at *9 (E.D. Pa. July 26, 2016), *report and recommendation adopted*, No. CV 15-40, 2016 WL 4270334 (E.D. Pa. Aug. 15, 2016) ("However, an analysis based on factual errors and mischaracterizations of the evidence cannot provide substantial evidence to find that a claimant's complaints of pain are not credible.").

Moreover, the ALJ did not explain how, in giving Plaintiff the benefit of the doubt, she assessed a "more restrictive" RFC. R. 68. As Plaintiff noted, the ALJ restricted Plaintiff to, *inter alia*, frequent handling and fingering and occasional reaching overhead, bilaterally, R. 62. Although, in attempting to explain and support the RFC and ALJ's reasoning, the Commissioner points to other evidence or discussion in the decision, the Court is not persuaded that the decision sufficiently explains the ALJ's consideration of Dr. Tarpinian's opinion or the actual manipulation limitation in the RFC. R. 62–69; *see also Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (requiring that an ALJ's decision must contain "sufficient development of the record and explanation of findings to permit meaningful review").

The ALJ's failure in this regard takes on even greater significance when one considers that the vocational expert, upon whose testimony the ALJ relied, R. 69–70, testified that a person with Plaintiff's vocational background and the RFC found by the ALJ would be unable to perform her past relevant work if that person could never reach overhead. R. 103–04 (explaining that the reaching limitation distinction between reaching overhead versus reaching in all directions was based on the vocational expert's training and experience). The vocational expert also testified that a limitation to only occasional reaching in front would also preclude Plaintiff's past relevant work, as would a limitation to only occasional handling and fingering. R. 105–06.

Based on this record, the Court cannot therefore meaningfully review the ALJ's consideration of Consultant Tarpinian's opinion or the RFC finding, nor can this Court determine whether substantial evidence supports that consideration and finding. *See Cotter v. Harris*, 642 F.2d 700, 706–07 (3d Cir. 1981) ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . [A]n explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted); *Bienkowski v. Bisignano*, No. 4:24-CV-1714, 2025 WL 1668328, at *7 (M.D. Pa. June 12, 2025) ("[A]s part of the ALJ's duty of articulation, the ALJ must establish a logical bridge between the evidence and the ALJ's legal conclusions and factual findings.").

This Court therefore concludes that remand of the matter for further consideration of this issue is appropriate.[8] Moreover, remand is appropriate even if, upon further examination of Consultant Tarpinian's opinion and the RFC determination, the ALJ again concludes that

---

[8] Plaintiff asserts other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of Consultant Tarpinian's findings and the RFC, the Court does not consider those assertions.

15

Plaintiff is not entitled to benefits. *Cf. id.*; *Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation.").

## VI. CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date:  April 7, 2026                                    *s/Norah McCann King*
                                                        NORAH McCANN KING
                                                        UNITED STATES MAGISTRATE JUDGE

16